# United States Court of Appeals
## For the First Circuit

No. 19-2046

UNITED STATES OF AMERICA,

Appellee,

v.

NOEL DE LEON-DE LA ROSA,

Defendant, Appellant.

No. 19-2067

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN BATISTA JOHNSON-DEBEL,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Kayatta and Barron, Circuit Judges,
and O'Toole,* District Judge.

---

* Of the District of Massachusetts, sitting by designation.

Fernando O. Zambrana-Avilés, with whom Colon Serrano Zambrana, LLC was on brief, for appellant Noel de Leon-De la Rosa.

Kendys Pimentel-Soto, with whom Kendys Pimentel-Soto Law Office LLC was on brief, for appellant Juan Batista Johnson-Debel.

Mariana E. Bauzá-Almonte, Chief Appellate Division Attorney for the Department of Justice, with whom Gregory B. Conner, Assistant United States Attorney, and W. Stephen Muldrow, United States Attorney were on brief, for appellee.

November 2, 2021

**BARRON**, **Circuit Judge**.  Noel de Leon-De la Rosa ("De Leon") and Juan Batista Johnson-Debel ("Johnson") challenge their respective federal convictions in the District of Puerto Rico, as well as the resulting sentences.  Those convictions are for destruction of a controlled substance while on a vessel, and conspiracy to destroy a controlled substance while on a vessel.  Their prosecutions followed their indictment for these offenses -- as well as for others for which they also were convicted but that are not at issue here -- after U.S. Customs and Border Patrol ("CBP") agents in April 2017 interdicted off the coast of Puerto Rico the small boat that De Leon and Johnson were on at the time.  We vacate the convictions that Johnson and De Leon each challenge, though we vacate Johnson's for different reasons than those that lead us to vacate De Leon's.

### I.

### A.

The following facts are not in dispute.  On the night of April 20, 2017, De Leon and Johnson were on a small boat about thirty miles off the northern coast of Puerto Rico, traveling southeast.  The boat had no running lights.

At around 9:00 p.m., a CBP agent patrolling those waters by airplane detected the boat on the plane's forward-looking infrared camera.  Suspecting drug smuggling, the agent called the

Coast Guard and the CPB's marine interdiction unit was dispatched to the boat's location.

The unit interdicted the boat just before midnight. After boarding the vessel, members of the unit determined that there was no contraband on board. CBP agents from the unit then detained Johnson and De Leon and brought the two of them -- along with the boat -- to the CBP facility in San Juan, Puerto Rico.

Once onshore at the CBP facility, at around 2:00 a.m., Johnson was interviewed by Francisco Calderón, an agent with U.S. Homeland Security Investigations. Calderón read Johnson the warnings required under Miranda v. Arizona, 384 U.S. 436 (1966),[1] and Johnson then answered questions that Calderón put to him about what had transpired aboard the boat. Johnson had also been interviewed immediately after the interdiction by Agent Miguel Borges.

The following morning, CBP Canine Enforcement Officer Adriel Castillo brought Honzo, a drug-detection dog, to inspect the boat. As Castillo walked the dog around the boat, Honzo "alerted" to the "[p]ossible contamination of narcotics."

That same day, Maritime Law Enforcement Specialist Matthew Tommie from the U.S. Coast Guard used a machine called an

---

[1] Johnson filed a motion to suppress his statements below but has not renewed any Miranda claims on appeal.

Ionscan 400B to test swabs taken from the vessel. The scan revealed no trace residue of narcotics.

**B.**

Johnson and De Leon were indicted in the District of Puerto Rico on May 18, 2017, in an eight-count indictment. The indictment set forth the following charges against each defendant:

> Count One[:] Possession with the intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States, aiding and abetting . . . in violation of [46 U.S.C. § 70503(a)(1) and 18 U.S.C. § 2].
>
> Count Two[:] Conspiracy to possess with the intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States . . . in violation of [46 U.S.C. §§ 70503(a)(1), 70506(b)].
>
> Count Three[:] Possession with the intent to distribute a controlled substance . . . in violation of [21 U.S.C. § 841 and 18 U.S.C. § 2].
>
> Count Four[:] Conspiracy to possess with the intent to distribute a controlled substance . . . in violation of [21 U.S.C. §§ 841, 846].
>
> Count Five[:] Conspiracy to destroy property subject to forfeiture under [s]ection 511(a) of the Comprehensive Drug Abuse Prevention Act of 1970 . . . that is [a] . . . controlled substance [while on a vessel]. . . in violation of [21 U.S.C. § 881(a) and 46 U.S.C. §§ 70503(a)(2), 70504(b)(1), 70506(d)].
>
> Count Six[:] Destruction of property subject to forfeiture under [s]ection 511(a) of the Comprehensive Drug Abuse Prevention Act of 1970 . . . that is . . . [a] controlled substance [while on a vessel] . . . in violation of [21 U.S.C. § 881(a), 46 U.S.C. §§ 70503(a)(2), 70504(b)(1), 70506(d), and 18 U.S.C. § 2].

- 5 -

The indictment also set forth two other counts. Count Seven charged Johnson alone with improper entry by a noncitizen in violation of 8 U.S.C. § 1325(a)(1). Count Eight charged De Leon alone with illegal reentry of a removed noncitizen in violation of 8 U.S.C. § 1326(a) and (b)(1).

Before trial, De Leon moved for severance. He did so on the ground that Johnson's statements to Calderón and Borges following the interdiction, if admitted in a joint trial with him, would violate De Leon's rights under the Confrontation Clause of the Sixth Amendment of the U.S. Constitution as interpreted in Bruton v. United States, 391 U.S. 123 (1968). The District Court denied the motion. De Leon moved for reconsideration, which the District Court denied.

De Leon then renewed his request at trial to exclude Johnson's statements to Agent Calderón based on Bruton. The District Court once again denied the request, explaining that "so long as [the confession] is sanitized then it's admissible." In charging the jury, the District Court instructed that the "statements . . . made by . . . Johnson [to Calderón]. . . can only be considered as evidence against [Johnson]" and "cannot be considered as evidence against [De Leon]."

At both the conclusion of the government's case and the close of evidence, the defendants argued that judgments of acquittal should be entered as to Counts One through Six for each

- 6 -

defendant because the government had failed to prove its case beyond a reasonable doubt. The District Court denied the motions.

The jury convicted Johnson and De Leon separately on Counts Seven and Eight, which set forth their respective immigration charges, and Counts Five and Six, which set forth their respective charges for destruction of property subject to forfeiture while aboard a vessel and conspiracy to commit the same offense. The jury acquitted both defendants of Counts One through Four, which set forth charges against each of them relating to possession with the intent to distribute a controlled substance. The jury verdicts entered on June 24, 2019.

Johnson and De Leon filed written motions for judgments of acquittal under Rule 29 of the Federal Rules of Criminal Procedure as to Counts Five and Six. The motions were denied.

The case proceeded to sentencing. Johnson was sentenced to fifty-seven months of imprisonment on his convictions for Counts Five and Six and three months' for his conviction on Count Seven, to be served consecutively for a total sentence of sixty months'. De Leon was sentenced to seventy-two months of imprisonment on his convictions on Counts Five and Six and twelve months' for his conviction on Count Eight, to be served concurrently.

Judgment entered against each defendant on September 25, 2019, and each filed a timely notice of appeal. See Fed. R. App. P. 4(b)(1)(A)(I). We have jurisdiction over their appeals of their

convictions under 28 U.S.C. § 1291 and over their appeals of their sentences under 18 U.S.C. § 3742(a).

## II.

We begin with the defendants' challenges to the District Court's denial of their motions for judgments of acquittal as to their convictions on Counts Five and Six. As we have explained, the latter count was for destruction of property subject to forfeiture while on a vessel, and the former count was for conspiracy to commit the same. See United States v. Godin, 534 F.3d 51, 61 (1st Cir. 2008). De Leon and Johnson each contends that the District Court erred because the evidence in the record does not suffice to support a finding of guilt beyond a reasonable doubt as to either offense.

Our review of the defendants' sufficiency-of-the-evidence challenges is de novo. See United States v. Burgos-Montes, 786 F.3d 92, 112 (1st Cir. 2015). In undertaking this review, we must consider the evidence "in the light most favorable to the verdict," United States v. Stewart-Carrasquillo, 997 F.3d 408, 417 (1st Cir. 2021), mindful that "both direct and circumstantial evidence, whether alone or in concert, can sustain a conviction," United States v. Clough, 978 F.3d 810, 816 (1st Cir. 2020).

We have cautioned that in reviewing a sufficiency challenge we may not "stack inference upon inference in order to

- 8 -

uphold the jury's verdict." United States v. Guzman-Ortiz, 975 F.3d 43, 55 (1st Cir. 2020) (quoting United States v. Valerio, 48 F.3d 58, 64 (1st Cir. 1995). At the same time, we also have explained that we "may not pursue a divide and conquer strategy," id. (internal quotation marks omitted), that would isolate each piece of evidence without giving due weight to the picture that it helps to create when the evidence is considered as a whole. Instead, we must consider the evidence "in its totality," id. at 54, as the ultimate question that we must answer "is not whether a reasonable jury could have acquitted the defendant, but rather whether a reasonable jury 'could have found that the government proved each element of the crime beyond a reasonable doubt.'" Stewart-Carrasquillo, 997 F.3d at 418 (quoting United States v. Paz-Alvarez, 799 F.3d 12, 25 (1st Cir. 2015)).

We agree with the government that, under the standards just described, there is no merit to the sufficiency challenges before us. To see why, it first helps to provide some more background about the government's case and the nature of the issues that are in dispute in relation to the defendants' sufficiency challenges. We then will turn to the specific arguments that each defendant makes about why the evidence is too thin, starting with Johnson's.

**A.**

The indictment charged De Leon and Johnson each with violating 46 U.S.C. § 70503(a)(2) and 18 U.S.C. § 2 by destroying property subject to forfeiture as defined by 21 U.S.C. § 881(a), as well as conspiring to do the same. Section 881(a), in turn, provides that certain categories of property are subject to forfeiture, including "[a]ll controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of [the Act]", id. § 881(a)(1), and "[a]ll raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance," id. § 881(a)(2).

The indictment specified the property subject to forfeiture for each defendant as "a manufactured, distributed, dispensed, acquired, or possessed controlled substance." Id. § 881(a)(1). The indictment did not identify "equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance" as constituting the predicate property subject to forfeiture for any of the charges against either De Leon or Johnson. Id. § 881(a)(2).

Notwithstanding these features of the indictment, the District Court instructed the jury as follows as to what it would need to find to return a verdict of guilty for the charges

- 10 -

underlying the convictions at issue here.  With respect to the charge for the underlying substantive offense, the District Court instructed, the jury would have to find beyond a reasonable doubt that: (1) "[O]n the date charged, [the] defendants were on board the vessel in this case and, at the time, destroyed property that was on board the vessel;" (2) "the property was a controlled substance or equipment used for delivering controlled substances" (emphasis added); and (3) "they did so knowingly and intentionally."  With respect to the charge for the underlying conspiracy offense, the District Court instructed, the jury would have to find the same with the one difference being that the jury would have to find beyond a reasonable doubt that the defendant "conspired to destroy property [subject to forfeiture] that was on board the vessel" rather than that the defendant had in fact destroyed it.

The government does not dispute, however, the defendants' contention that, despite the instructions, the forfeitable property that serves as the predicate for the underlying convictions is a "controlled substance" and not "equipment used for delivering controlled substances."  The government thus does not contend that the defendants' convictions may be upheld if the evidence suffices to show beyond a reasonable doubt that each destroyed -- and conspired to destroy -- such equipment rather than a controlled substance.  In this respect,

- 11 -

the government does not dispute the defendants' contention that the evidence must suffice to show beyond a reasonable doubt that the forfeitable property that each defendant destroyed -- and conspired to destroy -- was a controlled substance.

Nonetheless, the government contends that the defendants are wrong to assert -- insofar as they do -- that their acquittals of the counts that charge each of them with the cocaine possession offenses in and of themselves require us to sustain their sufficiency challenges to the convictions for the distinct offenses that they challenge here. We agree. A conviction on one count may be upheld against a sufficiency challenge, even though it is seemingly inconsistent with that jury's verdict of acquittal on another count. See Dunn v. United States, 284 U.S. 390, 393 (1932) ("Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment."); see also United States v. Powell, 469 U.S. 57, 64-65 (1984) (confirming that Dunn's rule remains good law).

The critical question for us, then, is whether, for each defendant, the evidence suffices to show beyond a reasonable doubt that each of them agreed to jettison cocaine from the boat and that each of them did so. For, if the evidence so suffices, then the defendants' challenges to the District Court's denial of their motions for acquittal necessarily fail.

Johnson contends that the evidence does not suffice to support his conviction for either the substantive or the conspiracy variant of the offense because "the only evidence showing destruction of cocaine was [his out-of-court confession]," and there was too little independent proof that tends to establish that the crimes to which he admitted in that confession occurred. He relies for this proposition on our decision in United States v. Tanco-Baez, 942 F.3d 7 (1st Cir. 2019).

In Tanco-Baez, we explained why a defendant's out-of-court confession alone, due to a specific concern about its reliability, cannot be the sole basis to support a conviction. That concern arises when there is no substantial independent evidence in the record that the crime that the confession encompasses in fact occurred. Thus, we explained in Tanco-Baez, such a confession must be supported by "substantial" independent evidence that "tends to establish" that the crime admitted in the confession in fact occurred in order for that confession to be given weight in assessing whether the evidence as a whole suffices to support the conviction beyond a reasonable doubt. Id. at 20 (quoting Opper v. United States, 348 U.S. 84, 93 (1954)).

We emphasized in Tanco-Baez, however, that the kind of evidence that could serve this corroborating function need not be strong enough in its own right to support the conviction. Id.

Rather, such evidence need be strong enough only to provide the kind of support for the confession's reliability that, despite the out-of-court circumstances in which it is claimed to have been made, would permit it to be deemed reliable when considered along with the evidence in the record as a whole. Id. Thus, in the event such corroborating evidence is present, the confession may be relied upon to support the conviction against the sufficiency challenge. Id.

Against this legal backdrop, we begin our analysis by considering the evidence of what Johnson concedes constitutes the out-of-court confession by him to the crimes for which he was convicted. That confession was introduced at trial through the testimony of the law enforcement agents to whom Johnson spoke soon after the interdiction of the boat.

First, Agent Calderón testified, in response to questions from the prosecutor, about the statements that Johnson made to him. Specifically, he testified as follows in that regard:

> Q: And what, if anything, did [Johnson] say about the contents of the boat[] he left on?
> A: He stated that once he was in the boat, eso, referring to drugs[,] were in the boat.
> Q: And he used that word specifically, eso?
> A: Eso, correct.
> Q: And when have you heard that in your career?
> A: In previous drug trafficking investigations where they will refer to drugs as eso.
> Q: Does eso refer to a particular type of drug or just drugs in general?
> A: Mostly cocaine as that was smuggled over in this . . . area of responsibility.

- 14 -

Q: And what, if anything, did Defendant Johnson say about what happened when law enforcement approached the vessel on which he was?

A: He stated that when he saw that he was going to be interdicted by the marine officers . . . he grabbed the small engine [to] which the bales were tied up, the doce piezas [was] the term that he used, called pieces, within two bales. Each one has six pieces, they were tied up to a rope to the small engine and he jettisoned [it] overboard, he threw them overboard into the water, so it would s[ink] and it [would]n't be recovered by law enforcement.

Q: I want to unwrap that statement just a little bit. You stated that he said that there was a small outboard engine onboard?

A: Correct.

Q: Did he provide any details about that small outboard engine?

A: I believe -- if I recall correctly it was a 30 horsepower.

Q: A 30 horsepower engine?

A: Correct.

Q: You said something about two sacks or bales.

A: Correct. He stated that there were two small sacks or bales and each one contained six pieces, referring to bricks of cocaine, for a total of 12 pieces, that were tied up to a rope to the engine, and he lifted it and threw them overboard.

Second, Agent Borges testified about what Johnson said to him. In doing so, he recounted that he "specifically talked to Johnson. And during those preboarding questions [Johnson] said . . . that they threw overboard a small spare engine."

Johnson does not dispute that, from the testimony of these two agents about the statements that he made to them, a reasonable juror could find that he admitted that he was aboard

- 15 -

the boat with another person (De Leon), that the boat was transporting cocaine, that he tied the cocaine to a spare engine, and that "they" intentionally threw the engine overboard (thereby destroying the cocaine) upon learning that the boat had been detected by law enforcement.[2]  In other words, he does not dispute that the statements -- together -- constitute a confession to the crimes at issue here.  Johnson nevertheless contends that this out-of-court confession cannot suffice to support either of his convictions at issue because there was an absence of "substantial" independent evidence that "tends to establish" that the crimes that he admitted committing in his out-of-court confession occurred.  See Tanco-Baez, 942 F.3d at 20 (quoting Opper, 348 U.S. at 93).  We do not agree.

For starters, substantial independent evidence was introduced at trial that "tends to establish" that the boat on which Johnson was traveling did have a controlled substance -- cocaine -- aboard it just prior to its interdiction.  Francisco González, the CBP agent patrolling the ocean by plane the night of

_____

[2] We note, in this regard, that in the testimony reciting Johnson's statements, the agents did not at any point assert that Johnson himself stated that the material he tied to the engine was "cocaine," as he instead referred to what was tied to the engine only as "eso" and "doce piezas."  But, the agents testified that "eso" and "doce piezas" are common slang terms that drug smugglers use to refer to cocaine.  Johnson does not contend that his statements -- because they refer to "eso" and "doce piezas" and not "cocaine" -- do not constitute a confession to the crimes charged.

the interdiction, testified that he spotted the boat on which Johnson was found in the waters prior to its interdiction. He further testified that the images that he reviewed on the infrared camera on his plane -- which were also introduced into evidence and that he testified were taken prior to the boat's interdiction -- showed "bales or packages" that were "in the middle" of the boat and thus in a location on the vessel that would have made it possible for those on board to "get rid of" the "bales or packages" easily if the boat were intercepted.

González also testified that the boat that the defendants were on was traveling near "Highway 19," which he described as a common drug smuggling route off the coast of Puerto Rico, when it was interdicted and that he had participated in a number of operations in which large quantities of cocaine had been seized from vessels traveling close to Highway 19. He further testified that the boat had no navigational lights running when it was spotted, and that it was the most "common type" of vessel to be carrying controlled substances because larger boats were typically used to smuggle migrants.

In addition, Calderón, who had questioned Johnson following the boat's interdiction, testified in his own right about the general practices of the drug trafficking operations that he had investigated during his time patrolling the waters around Puerto Rico. That testimony accorded with González's about how

such operations are usually conducted.  It accorded as well with the description that Calderón had provided about what González had observed with respect to the boat on which Johnson was found.

This testimony -- and the evidence from the infrared camera -- was not the only evidence that the government introduced that bears on whether there was substantial independent evidence that "tends to establish" that cocaine was on board the boat.  The government also introduced testimony from the handler of a drug canine, who testified that when the dog conducted a canine sniff of the boat, it alerted to "[p]ossible contamination of narcotics." The government also introduced testimony from an intelligence research analyst about the contents of a cell phone retrieved from the defendants' boat, as well as a report that contained a translation of those messages.  That evidence, together, showed that the phone's owner had some kind of transaction planned.

All of this evidence is independent of Johnson's out-of-court confession, and, at least when considered as a whole, it constitutes substantial evidence that "tends to establish" that cocaine was on board the boat prior to its interdiction.  It thus serves the necessary corroborative function with respect to that aspect of Johnson's out-of-court statements to Calderón about his criminal conduct.

The government introduced similarly substantial evidence independent of Johnson's out-of-court confession that "tends to

establish" another critical aspect of it -- namely, that there was a spare engine aboard to which Johnson had tied at least some of the cocaine that was aboard the boat. That evidence includes the evidence already described that indicates that the boat was involved in smuggling drugs -- specifically cocaine. It also includes testimony from Agents Calderón and González that cocaine smugglers often travel with a spare engine on board their boat for the purpose of ensuring that they have a ready means of disposing of the cocaine while they are on the open waters.

Agent Calderón testified in that connection that typically "bale[s]" containing cocaine are "tied" to a "smaller engine" by drug smugglers so that any cocaine tossed overboard "will sink and it will not be recovered as evidence by law enforcement." González, the CBP officer, also testified that drug smugglers package cocaine in "bales" and then they "attach each . . . bale[] to another [bale] with a line,. . . and at the end of the line they put some weight" -- often in the form of a "spare engine[]" -- so that if "any law enforcement vessel detect[s] them, they're able to throw it [into] the water and s[i]nk it [in] no time." Thus, there is substantial independent evidence in the record that "tends to establish" the aspect of Johnson's confession in which he admitted that such an engine was on the boat and that cocaine was tied to it.

Finally, the government provided independent evidence that "tends to establish" Johnson's admission that he intentionally jettisoned the engine after realizing that the boat had been detected by law enforcement. For example, González testified that, after the defendants appeared to hear the plane and the approaching interdicting vessel, and while he was moving the plane in for a closer look, he could no longer see on the infrared camera the bales or packages that he had originally spotted in the middle of the boat. Moreover, when the boat was interdicted, no bales or packages were found on board or in the water.

Viewed as a whole, then, the record contains "substantial" evidence that "tends to establish" each of the key components of the statements attributed to Johnson that he does not dispute, in pressing his argument under Tanco-Baez, combined to constitute a confession to his destruction of cocaine on board a boat. Accordingly, Johnson's Tanco-Baez-based challenge fails as to his conviction for the destruction of a controlled substance offense.

We emphasize that Tanco-Baez reversed a conviction for possession of a firearm by an unlawful user of a controlled substance under 18 U.S.C. § 922(g)(3) only after finding that the government did not sufficiently corroborate "each essential fact that [was] admitted" -- in that case, the defendant's statement to

law enforcement that he was a long-term marijuana user.  942 F.3d at 14-15, 25.  And, Tanco-Baez did so only after determining that the government was unable to provide any independent evidence that corroborated the admission of habitual drug use.  Id. at 24-25.

The government in this case, by contrast, provided substantial independent evidence that "tends to establish" all the relevant aspects of Johnson's admissions concerning the destruction of forfeitable property offense -- his statements that "eso" or cocaine was on the boat and tied to an engine, and his confession that "they" intentionally threw the engine overboard. We do not mean to suggest in emphasizing this distinction that independent evidence of this comprehensive kind is needed to satisfy the requirements described in Tanco-Baez for permitting an out-of-court confession to be given weight.  But, at least in the face of such comprehensively bolstering evidence, we must reject Johnson's contention that the evidence was not sufficient to support his convictions for the charged crime, given his conceded confession to it.

There does remain Johnson's challenge under Tanco-Baez to his conviction for conspiracy to destroy forfeitable property on a vessel.  But, to the extent that more is needed under Tanco-Baez to corroborate the aspects of the confession that bear directly on whether he committed the conspiracy offense -- namely,

- 21 -

his statement that "they" threw the engine overboard with twelve "piezas" tied to it -- more was provided.

Calderón testified that the thirty-horsepower engine Johnson professed to have thrown overboard through his statements to law enforcement would have "weigh[ed] approximately 50 [or] 60 pounds." Calderón further testified that, based on his experience investigating drug trafficking, each "pieza" of cocaine typically would weigh 2.4 pounds. Thus, that testimony supplies independent evidence that "tends to establish" that Johnson, after setting out on a multi-day trip on a small boat carrying controlled substances with De Leon, did not act alone in lifting more than sixty pounds in the dark of night but instead was assisted by his boatmate. So, here, as well, Johnson's Tanco-Baez-based challenges come up short.

### C.

We turn now to De Leon's sufficiency challenges to his convictions, which also are for destruction of property subject to forfeiture while aboard a boat and conspiracy to commit that offense. He challenges both convictions on the ground that the evidence of these charges was "circumstantial" and "improper[ly]" required the "jury [to] mount[] inference over inference."

We first consider whether the evidence suffices to permit a reasonable juror to find beyond a reasonable doubt that cocaine was on the boat and that De Leon assisted Johnson in

destroying it.  Because we conclude that it does, we conclude that De Leon's conviction for the destruction of forfeitable property as defined by § 881(a)(1) on a vessel is supported by sufficient evidence.

De Leon is right that we may not consider the statements that Johnson made to Calderón in which Johnson purportedly admitted either that "eso" or that a spare engine that had something tied to it was aboard the boat.  The jury was instructed not to consider those statements for purposes of assessing whether there was evidence sufficient to find De Leon guilty of the charges that he faced, and so we set them aside for present purposes.

There is no bar, however, to our considering the inculpatory statements by Johnson that Agent Borges testified Johnson made to him.  There was no similar prohibitory instruction by the District Court to the jury regarding those statements; they were admitted into evidence against De Leon.  Nor does De Leon argue otherwise.  Accordingly, we must take account of Johnson's statements that "they" threw the "engine" overboard, as he made that statement to Borges, in assessing whether the quantum of evidence in the record suffices to support De Leon's convictions.

With those preliminaries out of the way, the central question is whether Johnson's statement to Agent Borges that "they threw overboard a small spare engine" is sufficient to support De Leon's conviction for the destruction-of-forfeitable-property-

while-on-a-vessel offense when that statement is considered along with all the other evidence -- other than, that is, Johnson's statements to Agent Calderón. We conclude that it is.

At trial, the government presented circumstantial evidence, previously described, that "tends to establish" that cocaine was on the boat on which De Leon was found. This evidence includes the infrared images suggesting that the boat the defendants were on carried cargo or "bales" of some kind; the evidence of the text messages from the phone found on the boat that suggested that the sender had a transaction of some kind planned; the testimony from Agent González stating that the boat was traveling without navigational lights, on a route infamous for drug smuggling, and was the type of vessel commonly used for drug smuggling; and the testimony by the canine handler that after the boat was interdicted, a canine sniff of the boat revealed "[p]ossible contamination of narcotics."

Moreover, Agents Calderón and González provided testimony that in their experience drug smugglers often have spare engines aboard their boats to weigh down the cocaine in the event that they need to jettison the drugs to avoid their detection by law enforcement. And -- crucially -- Agent Borges testified that Johnson told him that "they threw overboard a small spare engine" prior to the boat being interdicted.

Thus, a rational juror could have concluded beyond a reasonable doubt that -- in light of the circumstantial evidence that the boat contained cocaine, the testimony that drug smugglers use spare engines to quickly dispose of cocaine in the event of an interdiction, and Johnson's statement that "they threw overboard a small spare engine" -- De Leon intentionally jettisoned cocaine from the vessel. The result is that we must reject De Leon's sufficiency challenge to his conviction for the destruction-of-forfeitable-property offense.

There remains De Leon's challenge to the sufficiency of the evidence supporting his conviction of conspiring to destroy forfeitable property. It, too, falls short.

Most problematic for De Leon is Borges's testimony that Johnson told Borges that "<u>they</u> threw overboard a small spare engine" (emphasis added) -- implying that Johnson worked with another person -- when he jettisoned the engine. As De Leon was the only other person on the boat, it is no leap to conclude that he was that other person.

Problematic as well for De Leon is Calderón's testimony that the likely weight of the engine Johnson described was "approximately 50 [or] 60 pounds." That testimony when combined with the other testimony in the record that drug smugglers typically tie cocaine to the engine -- which would add further weight to the already heavy engine -- would allow a reasonable

juror to conclude that De Leon and Johnson had to have worked together to have been physically able to move the engine and throw it overboard in the few minutes between when they heard the plane and when the boat was pictured as no longer containing bales. The record thus contains sufficient evidence for a rational juror to find beyond a reasonable doubt that De Leon conspired to destroy cocaine on a boat. The District Court therefore did not err in denying De Leon's motion for judgment of acquittal as to Counts Five or Six.

## III.

We next consider the defendants' arguments for vacating their convictions due to various alleged errors at trial. We begin with the arguments for vacating them that De Leon advances. We then consider Johnson's.

## A.

De Leon contends, among other things, his rights under the Confrontation Clause of the U.S. Constitution as recognized in Bruton were violated by the use of Johnson's statements to Agents Calderón and Borges at his joint trial with Johnson, notwithstanding the District Court's instruction to the jury that it could not consider Johnson's statements to Calderón in De Leon's case. We described these statements in detail above in analyzing Johnson's sufficiency challenges. For present purposes, we emphasize only that, to Agent Calderón, Johnson reportedly said

- 26 -

that "eso" was on the boat in the amount of "doce piezas" and that it was tied to a spare engine, which "he" threw overboard, and that, to Agent Borges, Johnson reportedly said that "they threw overboard a small spare engine." (emphasis added).

De Leon argues that the "statements" attributed to Johnson by Calderón and Borges "are incriminating on their face, and did not become incriminating by [his] testimony or by the introduction of any other evidence." Put otherwise, he contends, under Bruton, these statements, together, rendered the admission of Johnson's confession impermissible "regardless of what the [District] Court instructed the jury to do with it."

The government does not dispute that De Leon's Bruton challenge is preserved.[3] We thus proceed on that understanding, which means that our review is de novo. See United States v. Vega Molina, 407 F.3d 511, 520 (1st Cir. 2005). Because we find merit to De Leon's Bruton challenge, we must vacate his convictions on that ground alone. Id. at 522, 535. We thus do not address the various separate challenges that he makes to his sentence.

**1.**

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to

---

[3] In addition to conceding that de novo review applies, the government has not contended in its briefs or at oral argument that De Leon has waived any particular argument in support of his Bruton claim.

- 27 -

be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court of the United States held in Bruton that a defendant is deprived of that right "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial" and the "alleged accomplice . . . does not testify and cannot be tested by cross-examination." 391 U.S. at 135-36 (1968).

Notably, the Court set aside the defendant's conviction in Bruton despite "concededly clear instructions to the jury to disregard" the confession as to him. Id. at 137. The Court explained that it could not "accept limiting instructions as an adequate substitute for [Bruton's] constitutional right of cross-examination," id. at 137, given the "powerfully incriminating" nature of the confession as to the defendant himself, id. at 135.

In light of Bruton, the fact that there was a limiting instruction here -- with respect to Johnson's statements to Calderón -- is no bar to De Leon's challenge to the use of those statements. Insofar as the use of the statements is impermissible under Bruton, the instruction cannot cure it. We turn, then, to the question whether the use of the statements -- along with those that Johnson made to Borges -- is barred by Bruton. But, the answer to that question does not depend merely on what the Court said in Bruton itself.

In *Richardson* v. *Marsh*, the Court held that *Bruton* does not apply where "the codefendant's confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." 481 U.S. 200, 202, 211 (1987). The Court explained that the codefendant's confession in *Bruton* "'expressly implicat[ed]' the defendant as his accomplice" and "at the time that confession was introduced there was not the slightest doubt that it would prove 'powerfully incriminating.'" *Id.* at 208 (quoting *Bruton*, 391 U.S. at 124 n.1, 135). By contrast, the Court further explained, the confession at issue in *Richardson* "was not incriminating on its face, and became so only when linked with evidence introduced later at trial," namely, "the defendant's own testimony." *Id.* It then held that "[w]here the necessity of such linkage is involved," "the Confrontation Clause is not violated by the admission of [the] . . . confession" so long as there is "a proper limiting instruction." *Id.* at 208, 211; see also *Vega Molina*, 407 F.3d at 520 ("Statements that are incriminating only when linked to other evidence in the case do not trigger application of *Bruton*'s preclusionary rule.").

*Richardson*, however, does not itself mark the end of the story when it comes to *Bruton*. Thereafter, the Court weighed in on *Bruton*'s scope yet again in *Gray* v. *Maryland*, 523 U.S. 185

- 29 -

(1998), and, it did so in a way that is of direct relevance here, given the nature of the Bruton challenge that De Leon presses.

Gray recounted that "Richardson placed outside the scope of Bruton's rule those statements that incriminate inferentially." Id. at 195. But, Gray explained, "inference pure and simple cannot make the critical difference." Id. Instead, Gray held, the applicability of Richardson "depend[s] in significant part upon the kind of, not the simple fact of, inference." Id. at 196.

At issue in Gray was a codefendant's statement that included a response to the question, "Who was in the group that beat Stacey?" The answer had been redacted to read: "Me, deleted, deleted, and a few other guys." Id. at 196. The Court acknowledged "that the jury [was required to] use inference to connect . . . [such a] redacted confession with the defendant." Id. at 195. The Court nonetheless held that the redacted confession was facially incriminatory, id. at 197, notwithstanding the fact that statement did not expressly name Gray and even though it would be impossible to infer from the text of the codefendant's statement alone to whom "deleted" referred, see id. at 196.

Gray reasoned that a juror who put together the pieces of the evidence and the prosecutor's argument would naturally infer that the deleted reference in the confession must have been a reference to the defendant. Id. at 193; see also id. at 195 (noting that the "Court has assumed . . . that . . . specific

descriptions," such as "where confessions describe [a] codefendant as the 'white guy' and give[] a description of his age, height, weight, and hair color," "fall inside . . . Bruton's protection" (quoting Harrington v. California, 395 U.S. 250, 253 (1969))); Vega Molina, 407 F.3d at 520 (comparing the efficacy of redaction in a case involving "numerous events and actors, such that no direct inference plausibly can be made that a neutral phrase like 'another person' refers to a specific codefendant" with its utility in a case "involv[ing] so few defendants that the statement leaves little doubt in the listener's mind about the identity of 'another person'"). The Court pointed out that a juror need not be well-versed in the law to make that inference with ease. Indeed, the Court explained, if the "blank" referred to someone else, a juror "might . . . wonder how . . . the prosecutor could argue the confession is reliable, for the prosecutor, after all, has been arguing that [the defendant], not someone else" committed the crime described in the confession. Gray, 523 U.S. at 193. Thus, Gray makes clear that, even when the jury must engage in some inferential reasoning in order to conclude that a codefendant's statement is incriminating, the statement still may fall within the scope of Bruton. For the statement to do so, though, the inference that is necessary to make it incriminating must be one "that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial," such that the

statement "obviously" and "directly" implicates the defendant in the crime.  Id. at 196.

**2.**

The government contends that, notwithstanding Gray, there is no Bruton problem here in part because the statements attributed to Johnson were made to different agents who each independently testified about what Johnson had said to each of them.  In particular, the government asserts that when viewed separately, the two statements are not facially incriminating as to De Leon. Johnson's alleged statement to Agent Borges -- that "they" threw the engine overboard -- is not incriminating on its own, according to the government, as the government agrees that De Leon was not charged with jettisoning equipment used in connection with the transportation of a controlled substance but rather just destruction of a controlled substance while on a vessel. According to the government, Johnson's purported statements to Agent Calderón also did not facially incriminate De Leon, because Calderón testified that Johnson only described what he himself had done without mentioning De Leon.  In other words, the government's argument appears to be that the work that the jury would have to do to combine the statements would require too much inferential

reasoning to permit them to be deemed facially incriminating.[4]  We do not agree.

Whether a statement by a non-testifying codefendant is "facially incriminatory" of the defendant himself turns on how readily a juror might make the inferences required for the statement to be incriminating.  The government develops no argument -- beyond a conclusory one -- for determining that merely because the statements attributed to Johnson were introduced by the testimony of two different government witnesses it would take more than an immediately obvious inference for a juror to put them together.  It is thus reasonable to conclude here that the jury immediately, and without having to resort to other evidence, would have discerned the significance of the collective import of these statements, whatever it may have been, despite the fact that they were delivered separately, in just the manner contemplated in Gray.[5]  We therefore reject the notion that the government can

---

[4] In his arguments to us, De Leon contends that Johnson's statements are testimonial such that the Confrontation Clause applies.  The government does not contest this point, and thus we find the government to have waived any contention that the statements were not testimonial in nature.

[5] We note that our conclusion that the government cannot split a defendant's confession into pieces to evade a Bruton problem does not implicate the administrability concerns that informed the Court's holding in Richardson.  The government had the entirety of Johnson's statement available to it at the outset of trial, and we are not concerned under such circumstances that it would have been "[im]possible [for the government] to predict the admissibility of

avoid creating a Bruton problem by simply splitting up a defendant's confession and having multiple government witnesses testify to pieces of it.

True, as we explain later, a juror would have been free to believe the testimony recounting some of Johnson's statements but not others precisely because different agents recounted hearing them in distinct circumstances. But, the fact that some portions of testimony about a codefendant's confession might be given more weight than others by a juror is not a reason to conclude that the confession itself, if believed, is not facially incriminating under Bruton. Even when a codefendant's confession is admitted by testimony given by a single witness a jury might find some portions of that witness's recounting of it more credible than others. That there is a possibility that a jury may not actually find evidence of a codefendant's confession persuasive or even credible is of no moment under Bruton, which requires that we assume that a confession will be given maximum weight by a jury. See Bruton, 391 U.S. at 135-36. Consequently, we consider Johnson's statements together.

**3.**

Considering Johnson's separate statements as one, then, we must decide whether they, together, constitute a facially

_____

[that] confession in advance of trial." Richardson, 481 U.S. at 209.

incriminating confession within the meaning of <u>Bruton</u>.  Notably, we are not dealing here with a case that is just like <u>Richardson</u> and <u>Gray</u>, as each of those cases arose in the redaction context. Notably, too, we are not dealing here with statements that require any inference -- as the statements in <u>Richardson</u> and <u>Gray</u> did -- as to whether the allegedly incriminating statements of the codefendant implicate the defendant in the conduct described. Johnson's statements, given <u>Gray</u>, obviously referred to De Leon as a participant in the conduct by admitting that "they" acted together.  Nor does the government contend otherwise.

Thus, the <u>Bruton</u> challenge that De Leon raises turns on a question distinct from the one that arose in the Supreme Court's <u>Bruton</u> trilogy that we have detailed above.  The question here concerns whether the codefendant's statement is a confession to any criminal conduct at all, even as to himself.

The issue arises in this way here because the statements by Johnson that are at issue do not refer expressly to "cocaine" or "controlled substances" at any point.  They instead refer only to "<u>eso</u>" and "<u>doce piezas</u>."

This feature of the statements, however, does not necessarily preclude us from finding a <u>Bruton</u> violation here.  We have applied the <u>Bruton</u> framework in cases in which the question was not whether the anonymization was adequate but whether the admitted-to conduct was sufficiently inculpatory.  <u>See, e.g.</u>,

- 35 -

United States v. Lopez-Lopez, 282 F.3d 1, 11-13 (1st Cir. 2002) (considering whether Bruton applied to a codefendant's statement that could be read as referring to the defendant but was questionably inculpatory); United States v. Limberopoulos, 26 F.3d 245, 253 (1st Cir. 1994) (rejecting a Bruton claim as to statements that did "not implicate" the defendant); cf. Brown v. Maloney, 267 F.3d 36, 42 (1st Cir. 2001) (concluding a state-court decision was not contrary to clearly established Supreme Court precedent where it found no Bruton issue because the codefendants' statements were only "somewhat incriminating" because they only had the effect of placing the defendant "close to the crime location"). And, although, for record-based reasons, we did not find a Bruton violation in any of those cases, see, e.g., Lopez-Lopez, 282 F.3d at 11-13 (rejecting the defendant's Bruton claim as to a codefendant's statement directing the defendant "don't answer" in response to a question by law enforcement because the "statement [was] not sufficiently close to a confession" to be "powerfully incriminating" as it "did not even mention any person or any crime or any criminal responsibility"); Limberopoulos, 26 F.3d at 253 (concluding that Bruton did not apply to statements made by a codefendant when he surrendered a license because the inference "that the [statement] was an obvious attempt at deceit and coverup" was not obvious or immediate but rather "require[d] a considerable chain of subsidiary inferences"), the government does not argue

that, because we are not dealing with a redaction or a question as to whether the defendant is implicated in the statements by the codefendant confessing to criminal conduct, Bruton is inapplicable here.

The government's sole contention as to why there is no Bruton violation -- insofar as the statements at issue must be considered together -- hinges on the fact that Johnson did not at any point in his statements expressly assert that he had tied a controlled substance to the engine that was jettisoned. Rather, the government stresses, Johnson referred in those statements only to "eso."

According to the government, that feature of Johnson's statements in and of itself ensures that there is no problem here under Bruton, because it ensures that those statements are not themselves "facially incriminating" of De Leon. According to the government, the statements became so only when linked to the other testimony at trial that explained that "eso" and "piezas" are common slang terms for cocaine. We thus next take up that argument, which, as we will explain, fails to align with the logic set forth in Gray.

**4.**

The Court made clear in Gray that the bare text of the codefendant's confession in isolation does not control the Bruton inquiry. Instead, Gray instructs that where the record makes it

"obvious[]" that a statement that might be somewhat ambiguous taken alone is in fact facially incriminating, the inference required of the jury to find the statement incriminating is not "the kind of . . . inference" that would take the admission outside Bruton's ambit. Gray, 523 U.S. at 196 (emphasis omitted).

As the Court explained, "confessions that use shortened first names, nicknames, descriptions as unique as the 'red-haired, bearded, one-eyed man-with-a-limp,' and perhaps even full names of defendants who are always known by a nickname" are all examples of statements which the Court "has assumed . . . [are] not outside . . . Bruton's protection." Gray, 523 U.S. at 195 (quoting United States v. Grinnell Corp., 384 U.S. 563, 591 (1966) (Fortas, J., dissenting)). Our decision in Vega Molina is to the same effect. It explains that the inquiry under Bruton, Richardson, and Gray "requires careful attention" not only "to the text of the statement itself" but also "to the context in which it is proffered," all with the aim of assessing whether a "direct inference [from the statement] plausibly can be made." 407 F.3d at 520.

Applying this guidance, we have no doubt that if Johnson referred to cocaine in a language other than Spanish or English, the statement containing that reference would not be insulated from Bruton's reach just because the reference had to be translated to a different language to be understood by the jury. The same is

- 38 -

true, we think, if Johnson had used an obvious slang name for cocaine without using that word itself -- notwithstanding that the slang name could, in theory and stripped of context, have a different meaning, as might be true of the word "crack." There, too, we would still deem the statement to be facially incriminating, just as a nickname may be.

The only question here, then, is whether Johnson's references to "eso" and "piezas" in answering questions put to him during a criminal investigation triggered by suspicions of drug smuggling about what he had tied to the engine when he jettisoned it are similarly facially incriminating. We conclude that they are.

We may assume that the government is right that the words "eso" and "piezas" themselves do not in the abstract necessarily carry as an ordinary meaning "cocaine." But, language is always used in context, as Gray instructs us to remember in assessing whether a Bruton violation occurred. See Gray, 523 U.S. at 195-96; see also Vega Molina, 407 F.3d at 520-21. Taking that instruction seriously, we note that the government has not argued that there is anything in the record from which the jury could have concluded that "eso" and "piezas," as used in the context in which the witnesses described Johnson as having used them (namely, answering questions during an interrogation regarding his suspected drug smuggling), referred to anything but cocaine. Thus,

while neither word inherently carries that meaning, any more than a nickname or a description of a red-headed, bearded man with a limp inherently refers to a defendant who happens to have that alias or those characteristics, Johnson's statements were "facially incriminat[ing]" as to De Leon and fall within the ambit of Bruton. Gray, 523 U.S. at 196 (emphasis omitted) (quoting Richardson, 481 U.S. at 209)).

In accord with that conclusion, we are confident that "[a] juror who does not know the law," to use the Court's terminology from Gray, 523 U.S. at 193, would easily intuit that had the meaning of "eso" been ambiguous, Agent Calderón would have asked Johnson a follow up question -- namely, "What is eso?" Given that Calderón did not acknowledge asking such a question, a juror would immediately infer here that the meaning of "eso" was unambiguous to Johnson's interlocutor. And, in coming to that conclusion, a juror would also immediately infer that "eso" must obviously mean cocaine -- for if it did not mean as much, then Calderón would have continued to question Johnson about what was on the boat to determine if he would admit to possessing, destroying, and conspiring to destroy forfeitable property.

Because we determine that Johnson's purported statements to Agents Calderón and Borges were, when viewed together, facially incriminating, we find that the admission of those statements against Johnson in his joint trial with De Leon violated De Leon's

Sixth Amendment rights under Bruton.  As such, the limiting instruction the District Court gave as to Johnson's statements to Calderón were insufficiently curative.[6]  We consequently must vacate De Leon's convictions for Counts Five and Six.

**IV.**

We now turn to the challenges that Johnson brings in which he contends that, due to trial errors, his convictions must be vacated.  He presents three such challenges:  first, that one of the empaneled jurors was not impartial; second, that the District Court improperly allowed lay witnesses to testify to technical, specialized subjects; and third, that the jury instructions constructively amended the indictment.

"A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by [the] prosecution or court after the grand jury has last passed upon them."  United States v. DeCicco, 439 F.3d 36, 43 (1st Cir. 2006) (quoting United States v. Fisher, 3 F.3d 456, 462 (1st Cir. 1993)).  An amendment can be "brought about by a literal alteration of the words in the indictment," by "a jury instruction which modifies the offense charged," or by "the admission of evidence of

_____

[6] The government has developed no argument as to why, insofar as there is a Bruton violation, such a violation would constitute harmless error as to one or more of the counts of conviction that De Leon challenges.  See United States v. Wright, 937 F.3d 8, 30 (1st Cir. 2019) (explaining that "we may deem any harmless error argument not briefed by the government as waived").

an offense not charged by the grand jury." United States v. Dunn, 758 F.2d 30, 35 (1st Cir. 1985). Because we conclude that Johnson's assertion that his indictment was constructively amended and that he was prejudiced thereby has merit, we begin and end our analysis there.[7]

We first address Johnson's constructive-amendment argument as it pertains to the substantive offense for which he was convicted. We then address that argument as it pertains to his conviction for conspiring to commit that same offense.[8]

---

[7] Johnson's challenge to the admission of the testimony of various law enforcement agents on the ground that they were not qualified as experts but provided expert testimony anyway does concern an issue that could be implicated in any re-trial that may ensue. Nonetheless, it is not clear how the government will present that case if it chooses to bring one. We do note that we have emphasized in the past that "the line between expert testimony under Rule 702 [of the Federal Rules of Evidence] and lay opinion testimony under Rule 701 is, in practice, 'not [an] easy [one] to draw.'" United States v. Valdivia, 680 F.3d 33, 50 (1st Cir. 2012) (second and third alterations in original) (quoting United States v. Cólon Osorio, 360 F.3d 48, 52-53 (1st Cir. 2004)). Generally, "testimony based on the . . . expertise a witness personally acquires through experience, often on the job," is lay testimony. United States v. George, 761 F.3d 42, 59 (1st Cir. 2014) (citation omitted). But, testimony that requires a witness to go beyond "simple logic and pattern recognition" and to rely instead on a "technical understanding of the government's . . . tools and . . . capabilities" -- even if that technical understanding is developed on the job -- is typically considered expert testimony under our precedent, requiring the witness to be qualified as such. United States v. Montijo-Maysonet, 974 F.3d 34, 48-49 (1st Cir. 2020) (internal quotation marks and citations omitted).

[8] We note that even if De Leon could have raised the same arguments that Johnson now advances in support of his assertion that the indictment was constructively amended, he did not do so.

**A.**

Johnson acknowledges that the indictment "limited" his charged conduct, with respect to the substantive offense, to "the destruction of 'controlled substances.'" But, he points out that the jury instructions allowed the jury to find him guilty of that offense on grounds not included in the indictment. He contends in this regard that, under those instructions, the jury was told that it could find him guilty of the substantive offense even if it found that he had not destroyed controlled substances but instead had destroyed only "equipment . . . used . . . [in] . . . delivering . . . any controlled substance." (alteration in original).

Johnson does not dispute that he failed to raise this challenge below. Accordingly, Johnson must survive plain-error review to obtain relief on this ground. See United States v. Brandao, 539 F.3d 44, 47 (1st Cir. 2008). He thus must establish not only that there was an error, but "that it is 'clear or obvious,' that his substantial rights were prejudiced thereby, and that the 'fairness, integrity, or public reputation of judicial

As a result, we do not decide whether we would have vacated De Leon's convictions on the same constructive amendment grounds on which we vacate Johnson's convictions. See United States v. Kilmartin, 944 F.3d 315, 326 (1st Cir. 2019), cert. denied, 140 S. Ct. 2658 (2020) (noting that the court "ha[d] no duty" to consider a constructive amendment argument the defendant did not make on appeal).

proceedings' [was] 'seriously impaired,'" United States v. Gaccione, 977 F.3d 75, 81 (1st Cir. 2020) (quoting United States v. Rodríguez-Milián, 820 F.3d 26, 32-33 (1st Cir. 2016)). We conclude that he has made that showing.

**1.**

With respect to the first two prongs of plain-error review, Johnson contends that the District Court erred by "impermissibly add[ing] possible bases for conviction beyond that specified in the indictment" and that this error was clear or obvious. We agree.

In Stirone v. United States, 361 U.S. 212 (1960), the Supreme Court established that a constructive amendment occurs when jury instructions "broaden[] the possible bases for conviction from that which appeared in the indictment." United States v. Miller, 471 U.S. 130, 138 (1985) (emphasis omitted) (discussing Stirone, 361 U.S. at 213). There, the district court submitted to the jury two different theories under which the defendant could be found guilty of violating the Hobbs Act, either of which could have independently supported a conviction under the Act. Stirone, 361 U.S. at 213-14. But, the government had specified only one of those theories in the indictment, id. at 213, and the Court concluded that the instructions thus constructively amended the indictment, id.

- 44 -

The indictment in this case charged Johnson with "knowingly and intentionally destroy[ing] property subject to forfeiture" -- specifying that the "subject property" was a "controlled substance." The indictment thus limited the theories under which a jury could convict Johnson of the crimes. By instructing the jury that it could find Johnson guilty if it found beyond a reasonable doubt that "the property was a controlled substance or equipment used for delivering controlled substances" (emphasis added), the District Court instructed the jury about a crime that was not contained in the indictment -- and committed a "clear" and "obvious" error in doing so.

The government suggests that it was not an error to instruct the jury on both possible bases for conviction because 21 U.S.C. § 881(a), which lists the types of property subject to forfeiture, includes both "controlled substances" as well as "equipment of any kind . . . used [for] . . . delivering . . . controlled substances." 21 U.S.C. § 881(a). But, the fact that the government could have indicted Johnson for destroying "equipment used for delivering controlled substances" does not change the fact that the government did not.

The indictment limited the charges against Johnson to the one set forth in § 881(a)(1): destruction of a "manufactured, distributed, dispensed, acquired, or possessed controlled substance." We have previously found that when an indictment

quotes directly from a section of a statute, it can be understood to be referencing that specific section. See, e.g., United States v. Kilmartin, 944 F.3d 315, 326 (1st Cir. 2019). That is what we understand the indictment did here -- the indictment quoted from § 881(a)(1), thereby limiting the charge to that provision.

Moreover, the jury instructions then broadened the charge offense to encompass the one set forth in § 881(a)(2). The written instructions stated that the jury could find each defendant guilty of "intentionally destroying property that is subject to forfeiture under section 511(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970. (Title 21, United States Code, Section 881(a)(1))" -- defining the charged offense as the destruction of a controlled substance -- if the jury found, among other facts, that "the property [destroyed] was a controlled substance or equipment used for delivering controlled substances" (emphasis added). The oral instructions were substantially similar.

In other words, the jury instructions -- instructions that the government itself proposed -- recognized that the indictment was limited to the offense of destruction of property defined by § 881(a)(1) but then instructed the jury that it could find Johnson guilty of that offense if it found that Johnson had destroyed property defined by § 881(a)(1) or § 881(a)(2). See also Mathis v. United States, 136 S. Ct. 2243, 2257 (2016) ("[A]n

- 46 -

indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.").  By broadening the grounds on which a jury could convict Johnson of destruction of forfeitable property, the District Court constructively amended the indictment and committed a clear and obvious error.[9]

**2.**

We turn, then, to whether Johnson has met his burden to show that his "substantial rights were prejudiced" by the clear or obvious error.  Gaccione, 977 F.3d at 81.  The prejudice requirement of plain-error review is not satisfied in this context when, "given the evidence at trial, the jury could not have found [the defendant] guilty of . . . the amended charge[] if it had not also found he had [committed the indicted charge]." Brandao, 539 F.3d at 63.  In that situation, "[any] error" could not have affected whether the defendant had been convicted of the charged offense rather than the uncharged one set forth in the jury instructions.  Id.

The government contends that is the situation here.  It does not dispute that the jury may have, due to the instruction,

---

[9] The government does not dispute the necessary premise of Johnson's challenge -- that § 881(a)(1) and § 881(a)(2) set forth two distinct offenses rather than two means of committing the same offense.

determined that Johnson was guilty of destroying equipment, which § 881(a)(2) concerns. It simply contends that he was not prejudiced thereby, because any finding of guilt on that basis necessarily depended on the jury also finding him guilty of destroying cocaine, which § 881(a)(1) concerns. In other words, the government contends, Johnson's convictions necessarily encompassed all the charged conduct, even accepting that the only charged conduct deemed the predicate forfeitable property to be a controlled substance. It thus follows, the government contends, that Johnson cannot make the prejudice showing that he must.

To assess that contention, we must determine whether it is reasonably probable that a jury instructed as this one was would have determined, in finding Johnson guilty, that he destroyed equipment associated with a controlled substance without also finding that he destroyed a controlled substance. If that outcome is reasonably probable, then Johnson would have met his burden as to prejudice on plain error review. See id.; see also United States v. Takesian, 945 F.3d 553, 566 (1st Cir. 2019).

Johnson contends that, on this record, the "instruction guided the jury to convict by . . . finding that Johnson jettisoned a spare engine, . . . and not necessarily . . . the destruction of drugs." (emphasis omitted). He asserts that due to the "contradict[ing]" nature of the evidence at trial that cocaine was on the boat and the "undisputed and admitted" nature of Johnson's

- 48 -

statement that he threw the engine overboard, "the jury might have convicted based on something different than the destruction of cocaine." (emphasis omitted).

The government responds that Johnson fails to account for the requirement that the jury find that the "equipment" jettisoned was "used for delivering controlled substances." It argues that the only way a rational juror could have found the required connection to drugs is if "the jury . . . [found] that drugs were on the [boat]." We are not persuaded.

One reason for our reluctance to accept the government's argument about prejudice is that this jury acquitted Johnson of the cocaine possession and conspiracy to possess cocaine charges that he faced. It is true that a jury's acquittal of a defendant of an offense that is seemingly inconsistent with the jury's verdict of guilt as to that same defendant as to another offense has no bearing on whether the evidence is sufficient to support the finding of guilt as to that other offense. See Powell, 469 U.S. at 65. But, we are hesitant to accept the notion that such an acquittal adds nothing to a defendant's contention that it is reasonably probable that a plainly erroneous jury instruction of the sort at issue here caused prejudice because a jury found that defendant guilty of the uncharged offense without also finding him guilty of the charged one.

Moreover, here, the jury learned of the statements in which Johnson admitted that he had thrown overboard a spare engine upon being espied by law enforcement from two different agents -- only one of whom recounted that Johnson had said anything that indicated that cocaine had been tied to it. Indeed, the other agent, Agent Borges, who testified that Johnson had made the statement that the engine had been so jettisoned, did not indicate that Johnson made any reference to cocaine. Yet, that agent was the one who testified that Johnson had provided those answers in response to a standardized set of questions that were asked of all those aboard interdicted vessels before law enforcement boards them. By contrast, the agent who testified that Johnson had not only stated that he had thrown the engine overbroad but also had tied cocaine to it beforehand, Agent Calderón, reported that Johnson had so stated in an interrogation of him that occurred ashore several hours after the boat had been interdicted. No notes or transcript of that interrogation were introduced at trial. We thus conclude that, on this record, there is a reasonable probability that a juror would have weighed the testimony of the two agents differently and surmised, accordingly, that the spare engine had been jettisoned without also concluding that cocaine was tied to it.

That conclusion is reinforced by the fact that there was evidence in the record to indicate that the boat had been involved

in drug smuggling apart from the evidence that could support a finding that cocaine had been on the boat and jettisoned upon the boat's interdiction. That evidence included the alert from the drug canine indicating the possible presence of drug residue, the boat's location on a route infamous for drug smuggling, testimony that the boat was the type typically used for drug smuggling, and the text messages suggesting that a transaction of some sort was planned. It also included the testimony from Agents González and Calderón about the use that cocaine smugglers have for spare engines -- to destroy evidence of cocaine in the event of detection by law enforcement.

Thus, there was evidence that the spare engine was forfeitable property in its own right, regardless of whether these defendants used the engine to destroy cocaine during the journey that led to their interdiction. See, e.g., United States v. Latorre-Cacho, 874 F.3d 299, 310-11 (1st Cir. 2017) (finding error in the jury instructions to be prejudicial on plain error review when there was not insubstantial evidence presented to the jury that would have allowed it to reach a verdict based on the erroneous instruction). As such, it would not have been unreasonable for a juror to conclude that Johnson jettisoned the spare engine to conceal it from law enforcement simply because of its character as "equipment," forfeitable under § 881(a)(2) due to its connection to drug smuggling.

Accordingly, we conclude that, on this record, Johnson has met his burden to show that it is reasonably probable that a juror would have found that "the property [jettisoned] was . . . equipment used for delivering controlled substances" without also finding that controlled substances were jettisoned from the boat during this specific voyage. See Takesian, 945 F.3d at 566 ("'A reasonable probability' . . . is more than a mere possibility, but less than a preponderance of the evidence." (quoting United States v. Domínguez Benítez, 542 U.S. 74, 83 n.9 (2004))). As a result, we hold that "the record could [have] 'rationally le[d] to a contrary finding" and the prejudice prong of plain error is satisfied. Brandao, 539 F.3d at 63 (quoting Neder v. United States, 527 U.S. 1, 19 (1999)).

**3.**

That brings us to the fourth and final prong of plain error, which requires that we consider whether the error "seriously impaired" the "fairness, integrity, or public reputation of judicial proceedings." Gaccione, 977 F.3d at 81 (citation omitted). The purpose of the prohibition on constructive amendments is "to preserve the defendant's Fifth Amendment right to indictment by grand jury, to prevent re-prosecution for the same offense in violation of the Sixth Amendment, and to protect the defendant's Sixth Amendment right to be informed of the charges against him." Brandao, 539 F.3d at 57.

These rights are at the very core of our criminal justice system. Undermining these principles by allowing a constructive amendment would thus seriously impair the fairness and integrity of the judicial proceeding.

We therefore conclude that it was plain error for the District Court to constructively amend through its jury instructions the indicted offense of destruction of a controlled substance on a vessel. We consequently vacate Johnson's conviction of Count 6.

## B.

We now consider Johnson's constructive amendment argument as it pertains to his conspiracy conviction. Here, too, our review is for plain error. See Brandao, 539 F.3d at 60. We again find the standard satisfied.

## 1.

By quoting directly from § 881(a)(1), the indictment specified that the object of the charged conspiracy was the destruction, while on a vessel, of forfeitable property as defined by § 881(a)(1) -- "that is . . . a manufactured, distributed, dispensed, acquired, or possessed controlled substance." The District Court instructed the jury, however, that it could find the defendant guilty if it found that Johnson conspired to destroy, while on a vessel, "a controlled substance or equipment used for delivering controlled substances." (emphasis added).

Thus, for the reasons explained above, when the indictment was limited to charging Johnson with conspiracy to destroy forfeitable property in the form of a controlled substance, the District Court could not then instruct the jury that it could find Johnson guilty if it found that he conspired to destroy "a controlled substance or equipment used for delivering controlled substances." (emphasis added).

To be sure, we have allowed for some variation between the means alleged in an indictment for a conspiracy offense and what is presented to the jury at trial. But, here, the government does not dispute the premise of Johnson's challenge -- that the indictment alleged a conspiracy to commit one crime while the instructions permitted the jury to render a guilty verdict upon finding that the defendant conspired to commit a different crime because the forefeitable property was an element of the crime rather than a means of committing it. See, e.g., United States v. Mueffelman, 470 F.3d 33, 38 (1st Cir. 2006) (explaining that the conspiracy offense was not constructively amended because "the titular crime was not altered"). Thus, we conclude that the District Court committed clear or obvious error in its jury instructions with respect to the conspiracy offense.

**2.**

There remain the questions of whether Johnson has met his burden to show that this error "prejudiced" his "substantial

rights" and it would "seriously impair[]" the "fairness, integrity, or public reputation of judicial proceedings." Gaccione, 977 F.3d at 81 (quoting Rodríguez-Milián, 820 F.3d at 32-33). We conclude that he has.

With respect to prejudice, we again rely on the test articulated in Brandao and consider whether, "given the evidence at trial, the jury could not have found [the defendant] guilty of . . . the amended charge[] if it had not also found he had [committed the indicted charge]." Brandao, 539 F.3d at 63. We find that test satisfied.

The government's case against Johnson at trial as to the conspiracy charge overlapped considerably with its case as to the substantive offense of destruction of a controlled substance while on a vessel. A juror could have credited Agent Borges's testimony that Johnson purportedly told him that "they threw overboard a small spare engine," found compelling the testimony that drug smugglers typically have spare engines on their boats that they use to weigh down any jettisoned cocaine, and believed that the vessel in this case was likely used to transport cocaine at some point but did not have cocaine on board on this trip given that no cocaine was found. In addition, as to the element of agreement, that same juror, having already credited Borges's testimony that Johnsons said that "they threw overboard a small spare engine," (emphasis added), could have also relied on Agent

- 55 -

González's testimony that the engine of the type Borges's testimony referred to would weigh fifty or sixty pounds, such that throwing the engine overboard would be a two-man job. Thus, we conclude that there was a reasonable probability that a juror could have convicted Johnson of conspiring to jettison equipment used to transport cocaine rather than of conspiring to jettison cocaine. See Takesian, 945 F.3d at 566 (explaining that "'[a] reasonable probability' . . . is more than a mere possibility, but less than a preponderance of the evidence" (quoting Domínguez Benítez, 542 U.S. at 83 n.9)).

With respect to the fourth prong of plain error review, we must determine whether the clear or obvious error "seriously impaired" the "fairness, integrity, or public reputation of judicial proceedings." Gaccione, 977 F.3d at 81. We conclude that it did, for reasons similar to those that we set forth above in finding this same prong satisfied in the context of the substantive destruction-of-forfeitable-property offense. We therefore conclude that it was plain error for the District Court to constructively amend the indictment as to the conspiracy-to-destroy-forfeitable-property offense.

**V.**

For the aforementioned reasons, we decline to reverse either Johnson's or De Leon's convictions on sufficiency-of-the-evidence grounds. We **vacate** De Leon's convictions of Counts 5 and

6 and the associated sentence because the admission of Johnson's statements in their joint trial violated De Leon's rights under the Confrontation Clause to the Federal Constitution. As to Johnson, we **vacate** his convictions of Counts 5 and 6 and the associated sentences because the District Court constructively amended the indictment through its instructions to the jury.